UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTEZ MANELLE REDMOND,

            **Plaintiff,**                CIVIL ACTION NO. 15-cv-10006

    **v.**

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

            **Defendant.**
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15] AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

Plaintiff Cortez Manelle Redmond, proceeding *pro se* in this matter, seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)   Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 16).  Plaintiff has also filed a Response to Defendant's Motion.  (Docket no. 17.)  With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Docket no. 20.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 21, 2011, alleging disability beginning August 12, 2011, due to multiple

sclerosis; leg pain; depression; fatigue; drowsiness, as a side effect of his medication; and trouble focusing.  (TR 154-60, 203, 207.)  The Social Security Administration denied Plaintiff's claims on April 23, 2012, and Plaintiff requested a *de novo* hearing.  (TR 46-56, 62, 75-76.)  On September 10, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Mary S. Connolly.  (TR 29-45.)  In a September 26, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 11-23.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## II.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff does not set forth a statement of facts; instead, he incorporates factual allegations throughout his Motion and his Response to Defendant's Motion.  (*See* docket nos. 15 and 17.)  Defendant (docket no. 16 at 4-11), and the ALJ (TR 14-15, 16-21, 22) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between the ALJ's factual account and the record in this matter.  Therefore, the undersigned will incorporate the ALJ's factual recitation by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 12, 2011, and that Plaintiff suffered from the severe impairment of

2

multiple sclerosis.  (TR 13-14.)  The ALJ also found that Plaintiff's affective disorder of depression was not a medically determinable impairment or, in the alternative, it was a non-severe impairment.  (TR 14-15.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 15.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to unskilled work that allows for with [sic] mild concentration, persistence, and pace due to pain limitations. He is further limited to jobs that would allow him to be off task five to ten percent of an eight-hour workday due to pain.

(TR 15-21.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 21-22.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 12, 2011, through the date of the decision.  (TR 11, 22.)

## IV.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try

3

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be

deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

In his Motion for Summary Judgment, Plaintiff states that he was diagnosed with multiple sclerosis (MS) on September 6, 2011, and he asserts that MS has changed his life forever by rendering him unable to work at all.  (Docket no. 15 at 2.)  Plaintiff provides a brief

description of the disease, generally asserting that it produces symptoms of fatigue, walking difficulties, numbness or tingling, spasticity, weakness, vision problems, depression, dizziness and vertigo, bladder problems, and pain, which, in turn, cause significant limitations.  (*Id*.) Plaintiff also asserts that MS is "clearly" a medical condition that is expected to last for at least one year or to result in death.  (*Id*.)  As relief, Plaintiff requests that the ALJ's decision be reversed for an award of benefits.  (*Id*. at 3.)  Attached to Plaintiff's Motion are records of his prescription medications dated June 5, 2013, September 5, 2013, and November 6, 2013.  (*Id*. at 4-8.)  Plaintiff's Motion does not set forth the legal grounds under which Plaintiff seeks review of Defendant's decision; the crux of Plaintiff's argument simply is that he disagrees with the ALJ's decision that he is not disabled.

Defendant, in her cross-Motion for Summary Judgment, discusses the ALJ's decision at each step of the sequential evaluation process and argues that it is supported by substantial evidence.  (*See* docket no. 16.)  In response to Defendant's Motion, Plaintiff urges the Court to "look at the debilitating disease that [MS] is" and issue a decision in his favor based on his daily struggles with the ongoing pain, sleepless nights, depression, fatigue, and stress caused by the MS.  (Docket no. 17 at 2.)  Plaintiff also sets forth what could be construed as claims of legal error in his Response.  First, Plaintiff asserts symptoms of depression and inquires as to how he can be diagnosed with MS, but not with depression, where depression is one of the symptoms of MS.  (*Id*. at 8.)  Next, Plaintiff argues that the opinions of the consultative examiner, Dr. Montasir "should not be relevant because Dr. Montasir does not have the terminal illness called MS," so he cannot understand how Plaintiff's body feels on a day-to-day basis.  (*Id*. at 11-12.) Plaintiff also argues that Dr. Montasir never tested Plaintiff "on any of the activities that he stated in [Plaintiff's] case."  (*Id*. at 12.)  Additionally, Plaintiff alleges that he suffered several

6

falls in November of 2013, after which he was prescribed a cane to help him with his balancing issues.[1]  (*Id.*)  In closing, Plaintiff attests that he would never file for disability benefits if he were truly able to work.  (*Id*. at 12-13.)

### 1.      The ALJ's Step-Two Determination

Plaintiff asserts that he does not understand how he can be diagnosed with MS but not with depression, since depression is a symptom of MS.  (Docket no. 17 at 8.)  The diagnoses assessed by Plaintiff's physicians are beyond the Court's purview; however, to the extent that Plaintiff argues that the ALJ should have found depression to be one of Plaintiff's severe impairments at step two of the sequential evaluation process, such an argument is properly before the Court.

At step two of the sequential evaluation process, it is the claimant's burden to demonstrate that he suffers from a severe impairment.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  But the step-two severity analysis is simply a threshold determination.  It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe.  *McGlothin v. Comm'r of Soc. Sec*., 299 F.

---

[1] Plaintiff should have raised these arguments in his Motion for Summary Judgment, not in his Response to Defendant's Motion.  Nevertheless, in light of Plaintiff's *pro se* status, the Court will consider them in this Opinion and Order.

App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at step two of the sequential evaluation process, the ALJ found that Plaintiff's MS was a severe impairment. (TR 13-14.) The ALJ also found that Plaintiff's affective disorder of depression was not a medically determinable impairment because the record lacked sufficient objective medical evidence showing that Plaintiff's alleged depression was severe or that it had lasted at least twelve months in duration. (TR 15.) The ALJ further determined, in the alternative, that Plaintiff's depression was a non-severe impairment because the record evidence was insufficient to establish that it imposed significant limitations on Plaintiff's ability to work. (TR 15.)

In reaching this determination, the ALJ noted that Plaintiff's primary care physician had diagnosed him with depression. (TR 14.) The ALJ also acknowledged Plaintiff's testimony that he had recently started taking Cymbalta for pain and mood changes. (TR 14.) The ALJ then evaluated the medical opinion evidence related to Plaintiff's mental health and assigned it great weight.[2] (TR 14-15.) One such opinion is that of the state-agency psychiatric consultant, Dr. Zahra Khademian, M.D., who opined that Plaintiff's affective disorder was a non-severe impairment. (TR 50.) The other opinion relied upon by the ALJ was rendered by licensed psychologist David L. Hayter, Ph.D., who performed a consultative mental status examination of Plaintiff on April 9, 2012. (TR 314-17.) As a result of that examination, Dr. Hayter diagnosed

---

[2] Notably, Plaintiff does not challenge the ALJ's assessment of the medical opinion evidence.

8

Plaintiff with adjustment disorder with depressed mood and assigned him a GAF score of 60.  He then opined that, among other things, Plaintiff was able to understand, retain, and follow simple instructions, and he was generally restricted to performing simple, routine, repetitive, concrete, and tangible tasks.  In assigning these opinions great weight, the ALJ reasoned that both opinions were consistent with the record, which revealed that Plaintiff had not engaged in or received any mental health treatment since the alleged onset date.  (TR 14-15.)  The ALJ also commented that, according to the Sixth Circuit, a GAF score of 50 or greater is consistent with the ability to work.

Despite her finding that Plaintiff's depression was a non-severe impairment, in accordance with Dr. Hayter's opinion, the ALJ included a limitation of unskilled work that accounted for Plaintiff's mild difficulties with concentration, persistence, or pace due to pain into Plaintiff's RFC.  (TR 15.)  Because the ALJ accounted for the limitations generated by Plaintiff's depression in her assessment of Plaintiff's RFC, the ALJ's finding that Plaintiff's depression was not a severe impairment does not constitute reversible error.  Thus, to the extent that Plaintiff challenges the ALJ's step-two determination, Plaintiff's challenge fails.

### 2.  *Dr. Montasir's Opinions*

On June 1, 2013, Dr. E. Montasir, M.D. performed a consultative physical examination of Plaintiff with regard to Plaintiff's alleged disability.  (TR 321-35.)  The physical examination produced substantially normal results, including normal gait and stance, good handgrip, intact sensory functions, full muscle power, normal range of motion, and normal reflexes.  (TR 322-28.)  Dr. Montasir also completed a medical source statement regarding Plaintiff's ability to do physical work-related activities, in which he opined that Plaintiff could lift or carry up to ten pounds frequently and up to fifty pounds occasionally; sit for a total of eight hours, stand for a total of two hours, and walk for a total of two hours in an eight-hour workday; walk without a

cane; continuously reach, handle, finger, and feel; frequently push or pull; continuously climb stairs and ramps; frequently climb ladders or scaffolds, balance, and stoop; occasionally kneel, crouch, or crawl; and never tolerate exposure to unprotected heights.  (TR 329-34.)

The ALJ summarized Dr. Montasir's examination report and medical source statement and assigned Dr. Montasir's opinions great weight.  (TR 18.)  The ALJ reasoned that Dr. Montasir's opinion was consistent with the record as a whole, which revealed essentially normal physical examinations with normal gait except for Plaintiff's subjective complaint of left leg pain with intermittent numbness.  (TR 18.)  The ALJ also reasoned that Dr. Montasir's opinion was consistent with Plaintiff's statement in his function report that his condition does not affect his ability to lift.  (TR 18.)  Nevertheless, the ALJ decided to formulate an RFC slightly more restrictive than Dr. Montasir's assessment based on Plaintiff's testimony and the record as a whole.  (TR 18.)

Plaintiff argues, albeit indirectly, that the ALJ should not have relied on the opinions of Dr. Montasir because they are irrelevant.  (Docket no. 17 at 11-12.)  Specifically, Plaintiff asserts that Dr. Montasir's opinions are irrelevant because Dr. Montasir does not have MS and, therefore, he is unable to understand Plaintiff's condition.  (*Id*.)  But this is not a legal basis for discounting a physician's opinion or for deeming it irrelevant; there is no authority that requires a physician to suffer from the same impairments as a claimant in order to express a relevant and reliable opinion regarding the claimant's functional limitations.  Plaintiff also asserts that Dr. Montasir did not test him "on any of the activities that he stated in [Plaintiff's] case." (*Id*. at 12.) Plaintiff's argument in this instance is a bit vague; presumably, Plaintiff is referring to the physical work-related activities listed in Dr. Montasir's medical source statement.  Again, Plaintiff's cites to no authority that requires a physician to test a claimant's ability to perform

10

each and every work-related activity before rendering an opinion on the same. Here, Dr. Montasir physically examined Plaintiff and delivered an opinion based on the results of the examination. Plaintiff has not asserted reversible error with regard to the ALJ's assessment of Dr. Montasir's opinion, and the Court finds none.

### 3.      *Plaintiff's Introduction of New Evidence*

While not explicitly stated, Plaintiff seemingly asserts that the Court should consider evidence of the alleged falls Plaintiff took in November of 2013, which purportedly resulted in the prescription of a cane to assist Plaintiff with his balancing issues. (Docket no. 17 at 12.)  In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993).  "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

As an initial matter, Plaintiff has not submitted any objective medical evidence to the Court related to his November 2013 falls, his purported balancing issues, or the prescription for a cane to support his allegations of the same. Moreover, even if he had, Plaintiff has not demonstrated the materiality of any such evidence.  Evidence is only material if it relates to the plaintiff's condition before the ALJ's decision; evidence that the plaintiff's condition deteriorated or was aggravated is not relevant.  *See Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).  Plaintiff does not assert that he suffered balance problems to the extent that

he required the use of a cane prior to the ALJ's decision.  Indeed, throughout the record, Plaintiff was observed to have a normal and steady gait.  (*See* TR 279, 307, 309, 310, 315, 323.)  And on June 1, 2013, Dr. Montasir opined that the clinical evidence did not support the need for a walking aid.  (TR 328.)  Only once, on June 5, 2013, did Plaintiff report balance problems, but a simultaneous exam revealed a narrow-based gait, an ability to walk on toes and heels and in tandem, and a negative Romberg test.  (TR 336, 338.)  In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Sizemore*, 865 F.2d at 711).  Plaintiff has not done so here; therefore, the Court will not consider Plaintiff's allegations of falling, having balance issues, and receiving a prescription for a cane in November of 2013 as part of Plaintiff's appeal.

### 4.     The ALJ's Decision is Supported by Substantial Evidence

The ALJ considered the evidence at length and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms. Once this finding was made, the ALJ was required to evaluate the evidence as a whole, including Plaintiff's own statements about his pain or other symptoms, and consider the extent to which the intensity and persistence of the symptoms could limit his ability to work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   Whenever the evidence as a whole fails to support a claimant's statements about the intensity, persistence, or limiting effects of his pain or symptoms, the ALJ is required to make a finding on the claimant's credibility.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996).  "[A]n ALJ's findings based on

the credibility of [a claimant] are to be accorded great weight and deference." *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ provided an accurate summary of Plaintiff's testimony and his subjective complaints about the effect of his pain and other symptoms on his ability to work. The ALJ then considered Plaintiff's testimony in conjunction with his daily activities, and she found that they were not as limited as one would expect given Plaintiff's complaints of disabling symptoms. (TR 19.) In so finding, the ALJ noted Plaintiff's reported ability to perform all of the house work, mow the lawn, drive, shop for food and personal items, take his children to school, and maintain his finances. (TR 19.) The ALJ also reasoned that Plaintiff's complaints were quite vague and lacked specificity, citing specific examples in the record; that Plaintiff had been non-compliant with his medication for a short period of time; that Plaintiff hadn't applied for assistance to receive free mental health treatment; and that Plaintiff had received at least six months of unemployment benefits during the alleged disability period. (TR 20.) The ALJ also reasoned that the record was devoid of restrictions assessed by Plaintiff's treating physicians in spite of Plaintiff's allegations of totally disabling symptoms. (TR 20.) Ultimately, the ALJ found that Plaintiff's testimony and his other subjective complaints were not entirely credible. (TR 16.)

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p. Here, the ALJ found that Plaintiff's statements were not entirely credible, and the undersigned can find no fault in the ALJ's analysis of Plaintiff's subjective complaints. Moreover, the ALJ appears to have properly weighed the medical and opinion evidence of record. The undersigned has found no evidence to

13

conflict with the ALJ's RFC finding, let alone any reason to suggest that the ALJ's finding is not supported by substantial evidence. Furthermore, the ALJ presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations. (TR 44-45.) Plaintiff has not challenged the reliability of the VE's testimony or given any other reason to discount the ALJ's reliance on the VE's testimony regarding Plaintiff's ability to perform a significant number of jobs in the national economy. Therefore, the ALJ's decision is supported by substantial evidence.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [15] is **DENIED**, and Defendant's Motion for Summary Judgment [16] is **GRANTED**.

Dated: March 7, 2016                    s/ Mona K. Majzoub__
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Plaintiff and counsel of record on this date.

Dated: March 7, 2016                    s/ Lisa C. Bartlett_____
                                        Case Manager